UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Center for Biological Diversity, Center for Food Safety, and Defenders of Wildlife, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| United States Environmental Protection Agency, | : | Civil Action No. 14-942(GK) |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| E.I. du Pont de Nemours and Company, Syngenta Crop Protection LLC, and CropLife America, | : | |
| | : | |
| Intervenor-Defendants | : | |

## MEMORANDUM OPINION

Plaintiffs Center for Biological Diversity, Center for Food Safety, and Defenders of Wildlife ("Plaintiffs") bring this action against Defendant United States Environmental Protection Agency ("Defendant," "the Government," "the Agency," or "EPA"). Intervenor-Defendants E.I. du Pont de Nemours and Company, Syngenta Crop Protection LLC, and CropLife America ("Intervenor-Defendants") joined this action with the Court's permission.

This matter is presently before the Court on the Government's Motion to Dismiss for Lack of Jurisdiction [Dkt. No. 31] and

Intervenor-Defendants' Motion for Judgment on the Pleadings [Dkt. No. 41], which requests dismissal on similar grounds.

On September 19, 2014, the Government filed its Motion [Dkt. No. 31], and on October 15, 2014, Intervenor-Defendants filed their Motion [Dkt. No. 41]. On November 17, 2014, Plaintiffs filed their combined Opposition to both Motions [Dkt. No. 43]. On December 10, 2014, the Government and Intervenor-Defendants both filed their Replies [Dkt. Nos. 44 & 45]. Upon consideration of the Motions, Opposition, Replies, and the entire record herein, and for the reasons stated below, Defendant's Motion to Dismiss shall be **granted,** Intervenor-Defendants' Motion for Judgment on the Pleadings shall be **denied as moot,** and Plaintiffs' Complaint shall be **dismissed.**

I.    **BACKGROUND**

      A.    **Statutory Framework**

            1. *Federal Insecticide, Fungicide, and Rodenticide Act*

The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136-136y, protects the environment from "unreasonable adverse effects" arising from the use of pesticides, Id. § 136a(a). Under FIFRA, "no person . . . may distribute or sell . . . any pesticide that is not registered [with EPA]." Id. EPA will "register" a pesticide if

(A) its composition is such as to warrant the proposed claims for it;

(B) its labeling and other material required to be submitted comply with the requirements of this subchapter;

(C) it will perform its intended function without unreasonable adverse effects on the environment; and

(D) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment. Id. § 136a(c)(5).

Before registering a pesticide containing "any new active ingredient[,]" EPA must provide the public with notice and the opportunity to comment on "each application for registration[.]" Id. § 136a(c)(4). EPA's registration of a pesticide constitutes an Order within the meaning of the Administrative Procedure Act ("APA") and FIFRA. See Env't Def. Fund, Inc. v. Costle, 631 F.2d 922, 926 (D.C. Cir. 1980); United Farm Workers of Am., AFL-CIO v. Adm'r, E.P.A., 592 F.3d 1080, 1082-83 (9th Cir. 2010). Manufacturers may only distribute registered pesticides in a manner consistent with the registration order's packaging, labeling, and composition requirements. 7 U.S.C. § 136j; 69 Fed. Reg. 47732, 47733 (Aug. 5, 2004).

FIFRA divides judicial review between the District Courts and the Courts of Appeals. The appropriate forum depends, in part, upon whether EPA conducted a "public hearing" before issuing the relevant order. 7 U.S.C. § 136n(a)&(b). Generally, "the refusal of

[EPA] to cancel or suspend a registration or to change a classification <u>not following a hearing</u> and other final actions . . . not committed to the discretion of [EPA] by law are judicially reviewable by the [D]istrict [C]ourts of the United States." 7 U.S.C. § 136n(a) (emphasis added).

"In the case of actual controversy as to the validity of any order issued by [EPA] <u>following a public hearing</u>, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review . . . in the United States [C]ourt of [A]ppeals." <u>Id.</u> at § 136n(b) (emphasis added). A petition for review before the Court of Appeals must be filed "within 60 days after the entry of such order[.]" <u>Id.</u> "Upon the filing of such petition the [C]ourt [of Appeals] shall have exclusive jurisdiction to set aside the order complained of in whole or in part." <u>Id.</u>

### 2. *Endangered Species Act*

The Supreme Court has called the Endangered Species Act ("ESA") "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." <u>Babbit v. Sweet Home Chapter of Cmtys. for a Great Oregon</u>, 515 U.S. 687, 698 (1995) (quoting <u>Tennessee Valley Auth. v. Hill</u>, 437 U.S. 153, 180 (1978)). The Act aims to conserve endangered and threatened species and the ecosystems on which they depend. 16 U.S.C. § 1531(b). Section

-4-

7(a)(1) of the ESA obligates federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or result in the destruction or adverse modification" of designated critical habitats. 16 U.S.C. § 1536(a)(2).

In order to carry out this substantive obligation, when an agency determines that an action "may affect" any species listed as endangered or threatened ("listed species"), or its habitat, the agency must consult with experts in the United States Fish and Wildlife Service ("FWS") or the National Marine Fisheries Service ("NMFS").[1] 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a). "Consultation is 'designed as an integral check on federal agency action, ensuring that such action does not go forward without full consideration of its effects on listed species.'" Defenders of Wildlife v. Jackson, 791 F. Supp. 2d 96, 100 (D.D.C. 2011) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 603 (1992) (Blackmun, J., dissenting).

Agencies may forgo formal consultation, however, if they determine -- with FWS or NMFS's written concurrence -- that the proposed action is "not likely to adversely affect" any listed

---

[1] The NMFS, located in the Department of Commerce, is responsible for marine species, and the FWS, located in the Department of the Interior, is responsible for terrestrial and inland fish species. 16 U.S.C. § 1532(15); 50 C.F.R. §§ 17.11, 402.01(b).

species or critical habitat. 50 C.F.R. §§ 402.13(a), 402.14(b)(1).

When the formal consultation requirement is triggered, FWS or NMFS

must prepare a "biological opinion" stating whether the proposed

action "is likely to jeopardize the continued existence of listed

species or result in the destruction or adverse modification of

critical habitat." 50 C.F.R. § 402.14; see also 16 U.S.C.

§ 1536(a)(2).

ESA's broad citizen-suit provision empowers "any person" to

"commence a civil suit on his [or her] own behalf" to enjoin

violations of the Act's provisions, including an agency's failure

to consult. 16 U.S.C. §§ 1540(g)(1)(A), 1536(a)(2). The United

States District Courts have subject matter jurisdiction to hear

challenges brought under § 1540(g). However, would-be citizen-

plaintiffs must provide an agency with written notice of any

alleged ESA violation 60 days before filing suit. Id.

§ 1540(g)(2)(A).

B.   **Factual Background[2]**

1.   *Cyantraniliprole Registration*

The present controversy follows EPA's decision to permit the

use of the chemical compound cyantraniliprole ("CTP") as an active

---

[2] Since the Motions at issue contend that this Court lacks subject
matter jurisdiction, the Court may look beyond the pleadings to
determine whether it has subject matter jurisdiction. Jerome
Stevens Pharm., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253-

ingredient in pesticides. On February 29, 2012, EPA announced in the Federal Register that it had received applications to register pesticide products containing CTP pursuant to FIFRA. 77 Fed. Reg. 12295-97. Since no previously registered pesticides had included CTP as an active ingredient, EPA invited public comment on the applications until March 30, 2012. Id. To facilitate public comment, EPA created a public online docket for CTP. See EPA, Cyantraniliprole – Initial Registration, proposed uses on crops, turf, ornamentals, buildings, Docket EPA-HQ-OPP-2011-0668 (last visited on March 25, 2015), http://www.regulations.gov/#!docketDetail;D=EPA-HQ-OPP-2011-0668.

On May 23, 2012, EPA published a Notice of Filing of pesticide petitions to establish tolerances for CTP in the Federal Register with another opportunity to comment on or before June 22, 2012. 77 Fed. Reg. 30481-85; "Notice of Filing: Cyantraniliprole, Many Crops, from DuPont," AR at 13-16.

On June 6, 2013, EPA placed on the public docket its proposal to register CTP as a new active ingredient and again invited public

_____

54 (D.C. Cir. 2005). Because this case involves a challenge to an administrative action, there is a significant administrative record in addition to the pleadings. Accordingly, the facts that follow are drawn both from Plaintiffs' Complaint [Dkt. No. 1] and the parties' Joint Appendix, which contains excerpts from the Administrative Record [Dkt. Nos. 46 & 47].

comment. <u>See</u> "Public Participation for Cyantraniliprole as a New Active Ingredient, Insecticide Formulated as a Technical Product and Fourteen End Use Products," AR at 17-19; "Proposed Registration of the New Active Ingredient Cyantraniliprole," AR at 888-901. Following a one-week deadline extension, EPA accepted comments until July 14, 2013. <u>See</u> "Extension of Public Comment Period to July 14, 2013," AR at 906.

In total, EPA received twenty-three comments before the July 14, 2013 deadline. <u>See</u> Compl. ¶ 38; "Cyantraniliprole – Response to Public Comments on EPA's 'Proposed Registration of the New Active Ingredient Cyantraniliprole . . . ,'" AR at 1996-2041; "Registration of the New Active Ingredient Cyantraniliprole," AR at 1978-95, 1990.

EPA responded to each of the comments it received before the deadline, and on January 24, 2014, the agency approved the registration of CTP and fourteen end-use products containing the compound. AR at 1978-1995. EPA subsequently issued individual orders specifically registering the active ingredient CTP and fourteen end-use products and approving the labels for each. Compl. ¶ 39. All of EPA's orders relating to the registration of CTP and fourteen end-use products are collectively referred to herein as the "CTP Registration Order" or "CTP Registration."

On March 21, 2014, Plaintiffs provided EPA with notice of their belief that the agency had violated Section 7 of the ESA by failing to consult with the FWS and the NMFS before registering CTP. Compl. ¶ 10.

### 2.   *Procedural History*

On March 22, 2014, Plaintiffs filed a Petition for Review with our Court of Appeals, challenging EPA's alleged failure to consult with FWS and NMFS. Petition, Ctr. for Biological Diversity, et al. v. U.S. EPA, 14-1036 (D.C. Cir.) [Dkt. No. 31-2]. Plaintiffs submitted their Petition "pursuant to § 16(b) of FIFRA [7 U.S.C. § 136n(b)]," which provides for review of "any [FIFRA] order issued by the [EPA] Administrator following a public hearing" in the Court of Appeals. Id. ¶ 3. However, the Petition makes clear that Plaintiffs filed in the Court of Appeals only to preserve their claim in light of FIFRA's 60-day statute of limitations. Petition at ¶ 4.

On April 28, 2014, Plaintiffs asked our Court of Appeals to stay consideration of their Petition to allow litigation before this Court to proceed. Pet'rs' Mot. to Stay at 3 [Dkt. No. 31-3]. On June 13, the Court of Appeals granted Plaintiffs' Motion to Stay.

On June 3, 2014, Plaintiffs filed their Complaint before this Court, alleging that EPA violated the ESA, 16 U.S.C. § 1536(a)(2),

and the APA, 5 U.S.C. §§ 701-706, by registering CTP and fourteen end-use products without consulting FWS and NMFS. Compl. ¶¶ 44-49. The Complaint asks this Court to declare EPA in violation of ESA § 7(a)(2) and to "[e]njoin, vacate, and set aside EPA's authorization of any use of CTP that does not include protections necessary to avoid harm to listed species, until such time as EPA has put in place adequate permanent measures that ensure against jeopardy to listed species or adverse modification of their critical habitat[.]" Id. p. 22. The Complaint asserts three grounds for this Court's subject matter jurisdiction: the federal question statute, 28 U.S.C. § 1331; ESA's citizen-suit provision, 16 U.S.C. § 1540(g)(1); and in the alternative, FIFRA, 7 U.S.C. § 136n(a). Id. ¶¶ 9-10.

On September 19, 2014, the Government filed its Motion to Dismiss for Lack of Jurisdiction. On October 15, 2014, Intervenor-Defendants filed their Motion for Judgment on the Pleadings.[3] On November 17, 2014, Plaintiffs filed their combined Opposition. On December 10, 2014, the Government and Intervenor-Defendants filed their Replies.

---

[3] Under Fed. R. Civ. P. 24(c), parties seeking to intervene must answer the complaint with "the claim or defense for which intervention is sought." Thus, a motion under Fed. R. Civ. P. 12(b) was unavailable to Intervenors. See Yates v. Dist. Of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).

## II.   STANDARD OF REVIEW

As courts of limited jurisdiction, federal courts possess only those powers specifically granted to them directly in the U.S. Constitution or by Congress. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Hence, under Fed. R. Civ. P. 12(b)(1), Plaintiffs bear the burden of showing by a preponderance of the evidence that this Court has subject matter jurisdiction. Carney Hosp. Transitional Care Unit v. Leavitt, 549 F. Supp. 2d 93, 95 (D.D.C. 2008) (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)). In deciding whether to grant a motion to dismiss for lack of jurisdiction, the Court must "accept all of the factual allegations in [the] [C]omplaint as true[.]" Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253-54 (D.C. Cir. 2005) (citing United States v. Gaubert, 499 U.S. 315, 327 (1991)) (internal quotation marks omitted). However, the Court may look beyond the Complaint's factual allegations to determine whether it has subject matter jurisdiction. Id.

## III. ANALYSIS

The only question presently before the Court is whether it has subject matter jurisdiction to hear Plaintiffs' challenge. Section 16(b) of FIFRA, codified at 7 U.S.C. § 136n(b), vests "exclusive jurisdiction" in the United States Courts of Appeals to

hear challenges "to the validity" of FIFRA registration orders issued "following a public hearing." The Government and Intervenor-Defendants contend that, although Plaintiffs' Complaint exclusively alleges ESA violations, it also challenges the validity of EPA's Registration of CTP under FIFRA. Thus, according to the Government and Intervenor-Defendants, this case falls under FIFRA's grant of exclusive jurisdiction to the Courts of Appeals.

Plaintiffs argue that their action is governed by the ESA's citizen-suit provision, 16 U.S.C. § 1540(g)(1)(A), which places subject matter jurisdiction in the District Courts. In the alternative, Plaintiffs contend that EPA's Registration of CTP did not "follow[] a public hearing" and is therefore outside of § 136n(b)'s exclusive grant of jurisdiction to the Courts of Appeals.

### A.   FIFRA's Grant of Jurisdiction Governs Plaintiff's Action.

Plaintiffs' Complaint discusses at length the environmental effects of CTP and criticizes aspects of the CTP Registration Order, including, among other things, the label restrictions imposed by EPA. See e.g., Compl. ¶ 1 ("EPA's failure to consult . . . allows this pesticide to harm listed species."); id. ¶ 36 (alleging that EPA conducted insufficient "species-specific analysis" and failed to include appropriate use restrictions for mixtures of CTP and another insecticide called thiamethoxam); id.

¶ 41 (alleging inadequacy of use restrictions placed on pesticide labels under CTP Registration Order). As relief, the Complaint asks this Court to "[e]njoin, vacate, and set aside EPA's authorization of any use of CTP." Compl. p. 22. In short, the Complaint describes how CTP's Registration will result in "unreasonable adverse effects on the environment[,]" 7 U.S.C. § 136a(a), and asks the Court to overturn the agency's Order.

On its face, Plaintiffs' Complaint gives rise to an "actual controversy as to the validity" of the FIFRA Registration Order and is therefore governed by that Act's jurisdictional grant. 7 U.S.C. § 136n(b); see also Humane Soc'y of U.S. v. E.P.A., 790 F.2d 106, 110 (D.C. Cir. 1986).

Plaintiffs attempt to escape FIFRA's review procedure codified at 7 U.S.C. §136n, arguing that "[t]his case presents a single claim: . . . that EPA violated its procedural duty to consult under Section 7(a)(2) before finalizing the Registration of CTP. [Plaintiffs have] brought no claims under FIFRA or any other statute." Pls.' Opp'n at 10. Hence, in Plaintiffs' view, this Court has subject matter jurisdiction under the ESA's citizen-suit provision, 16 U.S.C. § 1540(g)(1)(A).

However, "[i]f . . . a special statutory review procedure [exists], it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review

in those cases to which it applies." Media Access Project v. FCC, 883 F.2d. 1063, 1067 (D.C. Cir. 1989). For that reason, Plaintiffs "may not escape an exclusive avenue of judicial review through artful pleading." Sandwich Isels Commc'nc, Inc. v. Nat'l Exch. Carrier Ass'n, 799 F. Supp. 2d 44, 51 (D.D.C. 2011) (citing Am. Bird Conservancy v. FCC, 545 F.3d 1190, 1194 (9th Cir. 2008)) (internal quotation marks omitted); accord Ctr. for Biological Diversity v. EPA, 2013 WL 1729573, at *18 ("Although Plaintiffs only challenge the EPA's failure to consult under ESA § 7, Plaintiffs' 'core objections' are to the pesticide registrations themselves, which are governed under FIFRA's administrative framework." (internal citation omitted)); City of Tacoma, Washington v. Nat'l Marine Fisheries Serv., 383 F. Supp. 2d 89, 93 (D.D.C. 2005) ("Styling its complaint as an independent action against the NMFS does not enable the City of Tacoma to evade the clear jurisdictional provision of the [Federal Power Act.]").

Specifically with respect to FIFRA registration, the D.C. Circuit has held that plaintiffs must bring all challenges to an Order's validity before the Courts of Appeals, even when a separate statutory scheme grants jurisdiction to the District Courts. Envtl. Def. Fund, Inc. v. Envtl. Prot. Agency ("EDF"), 485 F.2d 780, 783 (D.C. Cir. 1973). In EDF, the D.C. Circuit considered whether a challenge to a FIFRA registration order, which alleged

violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., could proceed in a U.S. District Court parallel to litigation before the Court of Appeals. Id. at 783. Ordering the parties to seek dismissal of their District Court suit, the Court said, "[w]hen the Congress required that [C]ourts of [A]ppeals exercise exclusive jurisdiction over petitions to review a FIFRA order, it was to insure speedy resolution of the validity of EPA determinations." Id. (internal citations omitted). When further factual development is unnecessary, litigation before a District Court would cause needless delay. Id.

The logic of EDF applies beyond the two statutory schemes the Court considered in that case. In City of Tacoma, 383 F. Supp. 2d at 92, the District Court held that an ESA claim challenging an order by the Federal Energy Regulatory Commission was subject to the exclusive jurisdiction of the Court of Appeals. Although ESA's text grants subject matter jurisdiction to the District Courts, "[i]t is well-established that when two jurisdictional statutes provide different avenues for judicial review, courts apply the more specific legislation." Id. at 92. Similarly, in Am. Bird Conservancy, 545 F.3d at 1193-94, the Court of Appeals for the Ninth Circuit held that plaintiffs could not avoid the Hobbs Act's exclusive grant of jurisdiction to the Courts of Appeals to review certain FCC orders by limiting their pleadings to ESA claims.

-15-

In a well-reasoned and thorough opinion, a magistrate judge in the Northern District of California addressed exactly the question presented here, finding that EPA's alleged "failure to consult [is] inextricably intertwined with agency actions governed by a regulatory framework." Ctr. for Biological Diversity v. E.P.A., 2013 WL 1729573, at *21 (N.D. Cal. Apr. 22, 2013) (citing Am. Bird Conservancy, 545 F.3d at 1193.). Relying on the Ninth Circuit's ample FIFRA and ESA precedent, the Court held that the plaintiff's ESA claim was, in fact, subsumed by FIFRA's grant of exclusive jurisdiction to the Courts of Appeals. Id. at *14; see also Council for Endangered Species Act Reliability v. Jackson, 2011 WL 5882192, at *5-6 (D. Ariz. Nov. 23, 2011) (similar reasoning and same result). Plaintiffs have failed to show how the facts of this case or the law of this circuit compel a different outcome.

Instead, Plaintiffs contend that application of FIFRA's exclusive jurisdictional grant would create an irreconcilable conflict between FIFRA's 60-day statute of limitations and ESA's 60-day notice requirement. However, such a conflict "is an illusion[.]" Am. Bird Conservancy, 545 F.3d at 1195 (holding that ESA's citizen-suit notice provision did not conflict with Communications Act's 60-day statute of limitations).

-16-

In order to protect Plaintiffs' procedural position, the Government concedes that if Plaintiffs do not rely on the ESA's citizen-suit provision for subject matter jurisdiction, they need not provide the Government with ESA notice before filing suit. Gov't's Reply at 3. Where parties rely on another statutory grant to provide subject matter jurisdiction, such as FIFRA's review provision, 7 U.S.C. § 136n(b), ESA's notice requirement simply does not apply. Cf. Washington v. Daley, 173 F.3d 1158, 1170 n.16 (9th Cir. 1999) ("Because [plaintiff's] claims were brought under the Magnuson Act, the Endangered Species Act's notice requirement need not be met.").

For these reasons, the Court holds that FIFRA's jurisdictional provision, 7 U.S.C. § 136n, governs Plaintiffs' claim.

**B.   EPA's Registration Order Followed a "Public Hearing."**

Plaintiffs contend that even if FIFRA's jurisdictional statute governs this dispute, EPA failed to conduct a "public hearing" before issuing the CTP Registration Order, and therefore, 7 U.S.C. § 136n(a) does provide this Court with subject matter jurisdiction. Section 136n divides subject matter jurisdiction to hear FIFRA challenges between the District Courts and the Courts of Appeals. Judicial review of EPA's "refusal . . . to cancel or suspend a registration or to change a classification not following

-17-

a hearing and other final actions . . . not committed to the discretion of the [agency]" is allocated to the District Courts. Id. § 136n(a) (emphasis added). Whereas, a "controversy as to the validity of any order issued by [EPA] following a public hearing" must be brought before one of the Courts of Appeals. Id. § 136n(b) (emphasis added). Thus, whether Plaintiffs' challenge is properly before this Court or the Court of Appeals depends on whether the CTP Registration Order "follow[ed] a public hearing." Id.

Plaintiffs argue that "public hearing," as used in § 136n, calls for more than "mere notice and an opportunity for written comment." Pls.' Opp'n at 25. Relying primarily on Black's Law Dictionary (9th Ed. 2009) and a dissenting opinion from the Ninth Circuit Court of Appeals, United Farm Workers, 592 F.3d at 1084-1087 (Pregerson, J. dissenting), Plaintiffs contend that "public hearing" is properly read to require a "quasi-judicial proceeding overseen by a hearing examiner[.]" Pls.' Opp'n at 23, 29.

However, Plaintiffs' position is directly contradicted by binding precedent, which holds that the adequacy of the record -- not the formality of the proceedings -- governs the question of whether there has been a "public hearing." E.g., Humane Soc'y, 790 F.2d at 111. This circuit's seminal case concerning "public hearings" under FIFRA is Environmental Defense Fund, Inc. v. Costle, 631 F.2d 922, 926-32 (D.C. Cir. 1980). In Costle, our Court

of Appeals declined to take a "literal approach" to the words "public hearing" and concluded that because "Congress designed [the] review provisions with the jurisdictional touchstone of the reviewable record in mind, the crucial inquiry is whether such a record is available." Humane Soc'y, 790 F.2d at 110-11 (discussing, construing, and reaffirming Costle, 631 F.2d at 925) (internal quotation marks omitted). Accordingly, despite "the lack of public notice, the absence of public participation, and the lack of any type of oral presentation by the parties[,]" the Costle Court held that "[b]ecause the record before [it] [was] wholly adequate for judicial review, . . . the proceedings[] antecedent to the [EPA]'s order were a 'public hearing' granting [the Court of Appeals] jurisdiction to review the challenged order." Costle, 631 F.2d at 927, 932.

Our Court of Appeals has repeatedly acknowledged Costle's continuing vitality. E.g., Humane Soc'y, 790 F.2d at 111; Nat'l Grain Sorghum Producers Ass'n, Inc. v. E.P.A., 84 F.3d 1452, *3 (D.C. Cir. 1996) (holding that agency had satisfied "public hearing" requirement despite lack of formal hearing because it had created an "adequate record for review in a court of appeals"). Moreover, relying in part on Costle, the Ninth Circuit has directly addressed the issue Plaintiffs raise, holding that notice and the opportunity to comment constitute a "public hearing" for purposes

of § 136n(b). <u>United Farm Workers</u>, 592 F.3d at 1083. Finally, another District Court in this Circuit has noted that "[c]ourts have generally interpreted [§ 136n(b)'s jurisdictional grant] to include [a]gency orders following public notice and comment." <u>Defenders of Wildlife v. Jackson</u>, 791 F. Supp. 2d 96, 102 n.3 (D.D.C. 2011) (citing <u>Humane Soc'y</u>, 790 F.2d at 112; <u>United Farm Workers</u>, 592 F.3d at 1082–83).[4]

Before issuing the CTP Registration Order, EPA developed the Administrative Record by providing notice and opportunity for public comment on several occasions. On February 29, 2012, EPA provided notice in the Federal Register that it had received CTP registration applications. 77 Fed. Reg. 12295-97. The Agency provided the public with the opportunity to comment on the Registration at that initial phase, and provided additional opportunity to comment on March 23, 2012 and June 5, 2013. <u>Id.</u>; Fed. Reg. 30481-85; AR 888-901.

---

[4] Plaintiffs argue that other sections of FIFRA, not here at issue, should guide this Court's analysis, noting that § 6(d) of FIFRA sets forth elaborate requirements for a "public hearing, including for notice, evidence, testimony, subpoenas, . . . deadlines for decisions, and the standard of review." Pls. Opp'n at 24 (citing 7 U.S.C. § 136d(d)). However, as Plaintiffs acknowledge elsewhere in their brief, Pls.' Opp'n at 25, our Court of Appeals has previously rejected the argument that "public hearing" as used in § 136n(b) includes the elaborate procedures described in FIFRA's § 6(d). <u>Costle</u>, 631 F.2d at 928.

This process resulted in an Administrative Record totaling more than 113,000 pages. Plaintiffs responded to these opportunities to be heard and provided significant input. See Compl. ¶ 38. The contents of the Record vary widely and include legal arguments, the results of scientific studies, general comments, and the registration applications themselves.

Nowhere in their Opposition do Plaintiffs point to any particular inadequacy in the Record. Instead, Plaintiffs argue that notice and the opportunity to comment are categorically insufficient to produce an adequate record. As the discussion of our Court of Appeals' precedent above makes plain, this argument is without merit.

Finally, Plaintiffs contend that it makes no sense to treat adequacy of the record as the jurisdictional lynchpin. In their view, that rule requires the Court to look into the administrative record prematurely -- before establishing its power to hear the case -- and forces plaintiffs to guess where to file -- an especially problematic feature given FIFRA's brief statute of limitations. While Plaintiffs' concerns are not trivial, this Court does not write with a free hand, and must, of course, follow controlling case law from the Court of Appeals. For all these reasons, the Court concludes that EPA held a "public hearing" within the meaning of 7 U.S.C. § 136n(b) prior to issuing the CTP

Registration Order, and therefore, this Court lacks subject matter jurisdiction to hear Plaintiffs' challenge.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss shall be **granted,** Intervenor-Defendants' Motion for Judgment on the Pleadings shall be **denied as moot,** and Plaintiff's Complaint shall be **dismissed.** An Order shall accompany this Memorandum Opinion.

May 14, 2015                                         _Gladys Kessler_
                                                      Gladys Kessler
                                                      United States District Judge

**Copies to:** attorneys on record via ECF

-22-